**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

No. 24-128

JANE DOE (a pseudonym),
    Appellant,

v.

JOHN ROE (a pseudonym) and MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,
    Appellees.

---

## APPELLANT'S REPLY TO APPELLEES' OPPOSITION TO RESPONSE TO ORDER TO SHOW CAUSE

Appellant Jane Doe respectfully submits this reply to Appellees' Opposition to Response to Order to Show Cause.

### INTRODUCTION

This Show Cause proceeding presents certain complex issues of first impression concerning how Rules 58 and 79(a) interact with orders appealable under the collateral order doctrine. While the appeal's timeliness is clear and warrants only remand for proper entry, any contrary conclusion would require full briefing rather than summary dismissal at Show Cause. The appeal is timely under three independent theories: (1) the orally issued order was never properly entered under Rule 79(a); (2) no valid entry occurred under Rule 58's separate document requirement; and (3) even if entry occurred, Appellees' novel interpretation of

Advisory Committee Notes cannot override Rule 58's plain text. Moreover, because the order encompasses both an immediately appealable collateral order and a final judgment of dismissal,  summary disposition under any of Appellees' theories is particularly unwarranted.

## I. TIMELINESS OF APPELLANT'S RESPONSE TO THE SHOW CAUSE ORDER

Appellees challenged Appellant's Response as untimely due to improper manner of service. However, Appellant's October 9 Response requested a 14-day extension under Fed. R. App. P. 26(b), which permits extensions upon showing of good cause, and clarity that the Show Cause was still required after a clerical error misidentifying the appealed order was corrected.

While Appellees challenge the filing method used, this Court need not reach that issue. As an unrepresented party consulting publicly available legal resources, Appellant perhaps mistakenly followed filing requirements for "briefs" rather than "other papers." See Fed. R. App. P. 25(a)(2)(B)(ii)-(iii). However, the pending 14-day extension request under Rule 26(b) would cure any technical deficiency in the filing method. Good cause exists for the requested extension. Appellant required a hearing transcript to complete the ordered timeliness analysis under Rule 79(a), is categorically barred from electronic filing as a pseudonymous pro se party, and received no service of the show cause order, discovering it only through independent docket monitoring.

## II. THE APPEALED ORAL ORDER WAS NEVER PROPERLY ENTERED UNDER RULE 79(a)

On March 13, 2024, the District Court pronounced a ruling orally from the bench in two parts: (1) denying Appellant pseudonymity and requiring disclosure of her true name, and (2) setting terms for dismissal without prejudice if Appellant did not comply within 30 days. Neither component was subsequently entered in compliance with Fed. R. Civ. P. 79(a).

Regarding pseudonymity, the Honorable District Court ordered the following (Transcript p. 18 at 7-20):

> THE COURT:
> Thank you. Here's what we're going to do.
> The motion to dismiss is denied on the following terms. Ms. Doe shall, within 30 days of today's date, file an amended complaint that sets forth her true name -- now it's easy to change your name in Massachusetts, and if she's changed her name, she may set forth her true name as changed in Massachusetts. If she has to refer to other people, she can refer to them as 'Witness 1' or 'Witness 2.' If she claims there are other victims or similarly-situated -- well they would be witnesses, but they can be referred to without their actual name, it's only the plaintiff, the party to the case, that the Rule 10(a) -- to which 10(a) applied.

Regarding the terms of a conditional order of dismissal, the following exchange occurred (Transcript p. 20 at at 12-20):

> MS. DOE: Yes, um, I suppose I do have a question. After 30 days, if I don't, um --
>
> THE COURT: I will dismiss your case not on the merits, but for

failure to file an amended complaint, as I have directed.

MS. DOE: Is that with or without prejudice?

THE COURT: No, it's without prejudice. But the statute of limitations is running and you can't just file another case before another judge or something, because our relatedness rules do require that you come back to me. Yes.

However, the following was the docket entry dated March 13, 2024:

> Electronic Clerk's Notes for proceedings held before Judge William G. Young: Motion Hearing held on 3/13/2024 (by video) re 17 MOTION to Dismiss the Amended Complaint filed by Massachusetts Institute of Technology, John Roe. The plaintiff notifies the Court that she has/will retain counsel. After hearing arguments on the motion, the Court enters an order denying 17 Motion to Dismiss upon the following condition: the plaintiff shall file an amended complaint within 30 days. The case to be dismissed after 30 days if an amended complaint is not filed. The case is placed on the running trial list for March 2025. Motions for summary judgment are due no later than January 2, 2025 and the deadline for discovery is set for December 1, 2024. (Ready for Trial on 3/3/2025 09:00 AM in Courtroom 18 (In person only) before Judge William G. Young.). (Court Reporter: Richard Romanow at rhrbulldog@aol.com.)(Attorneys present: Plaintiff appears pro se and Attorneys Lapp and Hannon for the defendants) (Gaudet, Jennifer) Modified on 4/2/2024 to reflect that the hearing was held by video (Gaudet, Jennifer). (Entered: 04/02/2024)

On April 12, 2024, the orally issued conditional order of dismissal matured to an effective final order when the condition was not met. Subsequently, the following was the text of the docket entry dated April 25, 2024, uploaded as a separate file and signed by the Clerk:

> In accordance with the Court's ELECTRONIC ORDER entered on March 13, 2024, it is hereby ORDERED that above-entitled action be

and hereby is DISMISSED.

The March 13, 2024 docket entry states only that "the Court enters an order denying 17 Motion to Dismiss upon the following condition: the plaintiff shall file an amended complaint within 30 days." This entry fails Rule 79(a)'s requirement that entries "show the substance of each order." *Willhauck v. Halpin*, 953 F.2d 689, 704 (1st Cir. 1991).

The entry omits two crucial elements. First, it entirely omits the court's ruling denying appellant the use of a pseudonym, the primary issue on appeal. While noting an amended complaint was required, the entry omitted that appellant was required to "file an amended complaint that sets forth her true name." Second, both the March 13 and April 25 entries omit that dismissal was ordered to be "not on the merits" and "without prejudice." See *Bolivar v. Pocklington*, 975 F.2d 28, 30 (1st Cir. 1992) (79(a) analysis shows different substance in dismissal with and without prejudice). This omission is significant as dismissal was sought under Fed. R. Civ. P. 10(a), which defaults to Fed. R. Civ. P. 41(b)'s presumption of dismissal with prejudice unless otherwise specified.

The case was removed from Massachusetts state court and could have been refiled there under the Massachusetts Savings Statute, Mass. Gen. Laws ch. 260, § 32, following dismissal for use of a pseudonym. However a state court interpreting

the March 13 and April 25 docket entries would have no basis to conclude that anything but an adjudication on the merits had been ordered.

Where no proper Rule 79(a) entry has occurred, the notice of appeal is treated as filed on the date of proper entry. Fed. R. App. P. 4(a)(2); *Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28, 34-36 (1st Cir. 2006).

## III. ALTERNATIVELY, NO VALID ENTRY UNDER RULE 58

Even if the docket entries satisfied Rule 79(a), they failed Rule 58's separate document requirement. The Supreme Court has held that Rule 58's separate document requirement "must be mechanically applied to render certain the date on which a judgment is entered." *United States v. Indrelunas*, 411 U.S. 216, 219 (1973). The First Circuit strictly enforces this approach, requiring judgments to be "self-sufficient, complete" and not "merely incorporate other documents by reference." *Mullane v. Chambers*, 333 F.3d 322, 337 (1st Cir. 2003).

From the March 13 docket entry alone, no reader could know what Appellant was ordered to do or the consequences for noncompliance. Because the hearing is both referred to in the docket entry and required to comprehend the relief granted, the docket entries are not standalone. See *Villoldo v. Castro Ruz*, 821 F.3d 196, 205 (1st Cir. 2016).

The March 13 Clerk's notes cannot constitute a separate document as they contain substantial other material and Clerk's notes memorializing a hearing do not

satisfy Rule 58's requirement. See *Cook v. Powell Buick, Inc.*, 155 F.3d 758, 761 n.8 (5th Cir. 1998). As noted in *Fiore v. Washington Cnty. Cmty. Mental Health Ctr.*, 960 F.2d 229, 236 (1st Cir. 1992), compliance with Rule 58 is straightforward: "a judgment or an order signed by the judge or clerk that is a separate document and labeled as a judgment or order would clearly comply."

The April 25 order similarly fails as a separate document because its terms are expressed only by reference to another document, and one that is not on the docket. See *Villoldo*, 821 F.3d at 205. Nothing on its face indicates dismissal is without prejudice, as required by Fed. R. Civ. P. 41(b). Moreover, it refers to a nonexistent "ELECTRONIC ORDER" dated March 13.

## IV. APPELLEES' RELIANCE ON THE ADVISORY COMMITTEE NOTE IS MISPLACED

Appellees argue that all orders appealable under the collateral order doctrine are exempt from Rule 58's separate document requirement, relying solely on an Advisory Committee Note to the 2002 Fed. R. Civ. P. amendments. This argument fails for several reasons.

First, the orally issued order encompasses both a collateral order and a conditional order of dismissal that matured to a final order thirty days later. Even if the Note could exempt purely collateral orders, it cannot exempt final judgments of dismissal.

Second, the Advisory Committee Note only applies to orders that are entered. If an order was not entered under Rule 79(a), the Note is not reached as a means to render the appeal untimely.

Third, the Note contradicts Rule 58's plain text, which exempts only five specific categories of orders, none including collateral orders. Fed. R. Civ. P. 58(a)(1)-(5). The Advisory Committee Notes are accorded a great deal of respect. See *Tome v. United States*, 513 U.S. 150, 160 (1995) (plurality) (recounting that Court has "relied on those well-considered Notes as a useful guide in ascertaining the meaning of the Rules" and has accepted them "as a respected source of scholarly commentary"). However, the Notes are extratextual and cannot override unambiguous rule text. They "are not part of the rules[,] . . . have no official sanction, and can have no controlling weight with the courts." See *Introductory Statement for Original Notes to Federal Rules of Civil Procedure*.

Fourth, the Fifth Circuit recently declined to apply this same Note when analyzing whether an interlocutory order immediately appealable under the collateral order doctrine was entered under Rule 58. *Ueckert v. Guerra*, 38 F.4th 446, 455 (5th Cir. 2022). The court reasoned it must apply Rule 58 as written because "that is what the plain meaning of the rules requires." *Id.* at 455. "In sum, then, parties have a 180-day window to file a notice of appeal if the district court

neglected to enter the judgment in a separate document." *Id*. at 453. The 180-day timeliness window is the one Appellant used when filing the Notice of Appeal.

Fifth, when the First Circuit has previously considered removing Rule 58's protections, it has done so through comprehensive deliberation, not summary show cause proceedings. See *Fiore*, 960 F.2d 229 (requesting special amicus briefing before adopting Rule 58 waiver doctrine).

### V. CONCLUSION

The Court should find the appeal timely under either Rule 79(a) or Rule 58 and remand for proper entry of judgment. See *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 273 (1991) (Rule 4(a)(2) permits appeals from decisions that will be appealable when entered). Under Fed. R. Civ. P. 58(c)(2), "judgment is entered ... when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs: (A) it is set out in a separate document; or (B) 150 days have run from the entry in the civil docket." *Johnson v. Boston Public Schools*, 906 F.3d 182, 190-91 (1st Cir. 2018). The Court should thus remand for proper entry and set a briefing schedule following entry.

Respectfully submitted,

Dated: November 1, 2024

/s/ Jane Doe

Jane Doe, Pro Se Appellant

411 Walnut St.
Green Cove Springs, FL 32043-3443
jane.doe.cv11935@gmail.com
(617) 798-0945

# EXHIBIT A

## <u>CERTIFICATE OF SERVICE</u>

I, Jane Doe, hereby certify that on November 1, 2024, I caused true and correct copies of the foregoing Reply and Accompanying Exhibit to be served as follows:

Via first-class mail, postage prepaid, with a copy by email hyperlink, upon:

> Daryl J. Lapp, Esq.
> Locke Lord LLP
> 111 Huntington Avenue
> Boston, MA 02199

Via first-class mail, postage prepaid, three copies to:

> Clerk of Courts
> United States Court of Appeals for the First Circuit
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2500
> Boston, MA 02210

I also certify that on November 4, 2024, I caused a duplicate copy to be filed by hand-delivery at:

> Clerk of Courts
> Drop Box
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way
> Boston, MA 02210

*/s/ Jane Doe*

Jane Doe
Pro Se Appellant

Dated: November 1, 2024

EXHIBIT A

1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS (Boston)

3                          No. 1:23-cv-11935-WGY

4

5   JANE DOE, a pseudonym,
                 Plaintiff

6

7   vs.

8

9   JOHN ROE, a pseudonym, et al,
                 Defendants

10

11                      * * * * * * * *

12

13                 For Zoom Hearing Before:
                   Judge William G. Young

14

15                    Motion to Dismiss

16

17                 United States District Court
                   District of Massachusetts (Boston)
                   One Courthouse Way

18                 Boston, Massachusetts 02210
                   Wednesday, March 13, 2024

19

20                      * * * * * * *

21

22            REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter

23                 United States District Court
        One Courthouse Way, Room 5510, Boston, MA 02210

24                      rhr3tubas@aol.com

25

```
1                    A P P E A R A N C E S

2

3    JANE DOE, a pseudonym
        Pro se plaintiff
4

5    DARYL J. LAPP, ESQ.
        Locke Lord, LLP
6       111 Huntington Avenue
        Boston, MA 02199
7       (617) 239-0174
        Email: Daryl.lapp@lockelord.com
8    and
     PATRICK J. HANNON, ESQ.
9       Hartley Michon Robb Hannon, LLP
        101 Federal Street, Suite 1810
10      Boston, MA 02110
        (617) 723-8000
11      Email: phannon@hmrhlaw.com
        For defendant John Roe, a pseudonym
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1            P R O C E E D I N G S

2            (Begins, 3:00 p.m.)

3            THE CLERK:  Now hearing Civil Matter 23-11935, Doe

4      versus Roe, et al.

5            THE COURT:  Good afternoon.  This is a hearing on

6      the defendant's motion to dismiss.  We're holding it on

7      our zoom platform at the request of the parties.  The

8      host for this zoom conference is Courtroom Deputy Clerk

9      Jennifer Gaudet.  The proceedings are taken down by our

10     Official Court Reporter, Rich Romanow.  And I have a law

11     clerk, Dan Hohler, on the line.

12           Out of a, um -- the issue here is whether the

13     plaintiff may proceed by way of a pseudonym?  And out of

14     deference to the plaintiff, while we are ruling on that

15     motion, she will be referred to only as "Jane Doe."

16           And before I go any further, um, let me ask

17     Ms. Gaudet, the Clerk, there's no one on the line --

18     though proceedings such as this are open to the public,

19     there's no one on the line save for Ms. Doe, defense

20     attorneys, and the court personnel that I mentioned, is

21     that right?

22           THE CLERK:  That is correct, Judge, and, Ms. Doe

23     is actually on, with her video on in her name, her first

24     name anyway.

25           THE COURT:  I see that.  But again, I -- to
```

1    preserve her unanimity I will -- and I mean no

2    disrespect, ma'am, I'm going to refer to you as

3    "Ms. Doe."

4          MS. DOE:  Yes, your Honor.

5          THE COURT:  So let's proceed in that fashion.  The

6    plaintiff is here and identified as "Jane Doe."  Defense

7    counsel may identify themselves, if they would.

8          MR. LAPP:  Thank you, your Honor.  Daryl Lapp on

9    behalf of MIT and John Roe.

10          THE COURT:  Thank you.

11          And I see a "Patrick Hannon."  What is his

12    relation to?

13          MR. HANNON:  Good afternoon, your Honor, I'm

14    Patrick Hannon, I also represent defendant John Roe.

15          THE COURT:  Okay, thank you.  All right.  Well now

16    we have everyone.

17          And I really think the place to start is with MIT.

18    I have real doubts about proceeding by way of a

19    pseudonym and I'm going to ask Ms. Doe about that, but,

20    um, a dismissal seems an overly-harsh remedy.

21          Why ought we not do something more modest and get

22    on with this case in the ordinary course?

23          MR. LAPP:  Because, your Honor, um, dismissal is

24    appropriate here because Rule 10 is very clear that, um,

25    absent leave to proceed anonymously, the parties must go

1    forward in their own name.

2         THE COURT:  And you're right, but suppose I were

3    to say "Suppose that's right and there is not a basis

4    for proceeding anonymously," and I give her some time to

5    amend and go forward in her own name, if she chooses to,

6    and if not, well then we can't go forward.  That's

7    appropriate, isn't it?

8         MR. LAPP:  Yes, and I would point out to the Court

9    that this has been going on for 10 months.  The lawsuit

10   was --

11        THE COURT:  I understand.  I've looked at the

12   docket.  And so now let me turn to Ms. Doe.

13        Ms. Doe, um, it seems to me that defense counsel

14   is right, the rule is clear, and of course you've made

15   complaints to administrative agencies, and you've made

16   it in your own name, and while the defense lawyers have

17   been very respectful and respected your claim of

18   anonymity, there are important public policy reasons to

19   do the public's business in public courtrooms, unless

20   there's a real need for anonymity.

21        What is the need for anonymity here where they

22   know your name and the administrative agency know your

23   name?

24        MS. DOE:  Thank you, your Honor.

25        I, um -- I wanted to say that I had not come to

1    this hearing prepared to argue a motion to proceed under

2    a pseudonym, what I had wanted to argue was the

3    opportunity for this motion to be placed with another

4    related case in this district. I had wanted to file a

5    motion, um, to oppose the nondesignation of relatedness.

6    And there's another plaintiff in a case closely related

7    to this one, it's proceeding under a pseudonym also, who

8    has filed a motion to proceed under pseudonym. His case

9    precedes this one.

10            I spoke with, um -- I conferred with MIT's

11    counsel, um, at the end of last year on this topic. I

12    had a leave from the Court for about 45 days. I first

13    sought an extension from the Court and then I got it

14    continued for opposing counsel, um, due to a serious

15    family illness and a hospitalization of a family member.

16            In the meantime, um, one -- well let me back up.

17    The relatedness of these two cases -- the other one is

18    *John Doe v. MIT*, is that they involve the same -- um,

19    they're both employment cases involving discrimination,

20    they have the same supervisor and the same laboratory.

21    And it's the case that, um, we're dealing with one case

22    which would almost certainly be related to another one.

23    That prior to filing this case, John Doe, in another

24    case, already filed that case under a pseudonym. And so

25    what I had, um, wanted to request from the Court was the

```
 1    time to file motions, um, is -- for these to be
 2    considered together on the merits.
 3         And, um, part of that is that, um -- and I'm
 4    prepared to go through the standards in *Doe v. MIT*,
 5    which the First Circuit set the standards for anonymity,
 6    and to discuss which of those apply?  But before I do
 7    that, I did want to state that I believe that there is a
 8    related case in this circuit -- excuse me, in this
 9    district that's better related to these circumstances in
10    particular.
11         THE COURT:  Well, one, you have not filed such a
12    motion, the first I'm hearing about it is at this
13    hearing, which I duly set to consider the motion to
14    dismiss.
15         MS. DOE:  Yes.
16         THE COURT:  Two, as you explain it, under our
17    rules these cases are not related.  Even though you
18    suggest points of relationship, these are different
19    cases that necessarily must be decided on their own
20    facts.  So I'm not ruling on a motion I don't have
21    before me.  You can go ahead and file such a motion.
22    But you suggest -- so I'm not waiting.
23         MS. DOE:  Okay.
24         THE COURT:  It is important to move cases along to
25    resolution.  And so if you think there are grounds why I
```

```
 1   am required, or even in the wise exercise of my
 2   discretion, I should allow you to proceed under a
 3   pseudonym, please state them now.
 4        MS. DOE:  Okay, um, let me open up the *Doe v. MIT*
 5   standards that are in front of me.
 6        And so there are four paradigms, um, that the
 7   inquiry should be focused on, according to that case.
 8   The first one is whether the cases in which the
 9   plaintiff, myself, has reasonable fears of severe
10   physical or psychological harm.
11        I am a witness in a criminal case in which I have
12   been subject to death threats.  I have taken steps to
13   change my name.  I have already started to use a
14   different name.  And I have certain fears that my
15   participation in this case will expose me to physical
16   harm from the perpetrator in that case, um, in which I'm
17   cooperating with a federal criminal investigation.  So
18   that's one of the reasons.  And this is something that I
19   had hoped to be able to bring to you in greater detail
20   in writing with attached evidence.
21        And I did want to say that since this came up,
22   since this was filed by MIT, I have, um, been seeking
23   counsel, which I retained just about a week ago, and I
24   have had a hospitalized family member.  And so I would
25   really like to be able to present this evidence to you.
```

1        In addition to that, um, that as to the

2    relatedness of these cases, whether or not they're

3    officially designated as "related," excuse me, the

4    second -- excuse me.  The, um, second, um, *Doe v. MIT*

5    factors is that dealing with nonparties.  And if we're

6    dealing with, um, the parties in this case, we are

7    dealing with the identities of nonparties, um, who would

8    have reason to be synonymous.  The interests of

9    nonparties, in the *Doe v. MIT* standards, are considered

10   to be greater than the interests of the parties.

11       The person who has filed, um, that motion -- and I

12   want to be mindful, um, about revealing information on

13   the public record.  That person is a transgender

14   individual, um, and that's one of the categories that's

15   involving, um, whose identity has been protected in

16   federal civil litigation.  Their motion reflects a lot

17   of precedent as to the safety and fears of transgender

18   people and they're particularized here.

19       And so their circumstances and their identities

20   are actually part of my case and my circumstances are

21   part of their case, and so there's a lot of factual

22   overlap, and a decision in one case, um, might help

23   determine key facts in another case.

24       As to, um, the *Doe v. MIT* standards that require a

25   designation of relatedness, whether it would be required

1    or not in this case, they are still nonparties, um, who

2    have particularized fears of harm due to their

3    transgender status in the ways that they have

4    particularly described to that court.

5        And so in addition to that, um, there are a number

6    of student nonparties in this case whose identities are

7    being protected under FERPA, um, who are entitled to not

8    have their identities revealed by MIT or in civil

9    litigation.  There are two of them who are named in my

10    complaints in particular, one is accused of harassment

11    and the other one is accused of activity that may have

12    criminal connotations, and those are two examples.

13        In the administrative complaints that MIT

14    identified, there are further nonparties who are named

15    and who would, um, stand to be revealed in this case,

16    particularly who can be identified, um, by the context.

17        The FERPA law, which protects students by the

18    statute, um, requires consideration not only of the

19    means themselves, um, but by certainly circumstances

20    which can allow the identification of student names from

21    further context.  I've put together some, um, statements

22    from academic agencies, the NAA, which is one of them,

23    that talk about the risk of outing people from context

24    in the academic settings because of small labs and the

25    like.

1    Part of my claims, um, that are not in the
2    complaint right now, because they're still before the
3    agencies, but have recently become part of this
4    complaint, are that I am personally, um, a person who
5    has experienced sexual assault, um, during part of my
6    experience at MIT, and MIT's response has been
7    inadequate in the same ways described in this case.
8    People who have experienced sexual assault in university
9    settings, um, and along that topic have regularly been
10   afforded the ability to proceed pseudonymously.
11        And then in addition to that, um, this case, um,
12   is a university case with Title IX confidentiality, um,
13   considerations, including, um, these considerations from
14   the First Circuit setting the standards in **Doe v. MIT**
15   and a risk of, um -- and this is the third standard
16   here, whether the case is one in which compelled
17   disclosure will likely deter certain individuals from --
18   (Unintelligible) and similarly-situated individuals,
19   from litigating.  And that is people who've experienced
20   certain types of discrimination in university settings
21   and sexual assault, um, who ought not have their, um,
22   participation, um -- excuse me, their participation in
23   these adjudicated processes chilled.  And this is
24   something that has come up again and again in
25   considering anonymity in --

```
1          THE COURT:  Am I not correct that these, um -- you
2     say I don't have the allegations of sexual assault
3     before me and, as I review the papers here, I don't, but
4     you say they're coming downstream, right?
5          MS. DOE:  Well I do think that at the end of the
6     complaint -- and I have to find the paragraph, but I do
7     mention that somewhere, um, and I mention certain
8     privacy violations as well.  I'd have to look that up.
9     But I do think that I had some information that I
10    acquired by -- and I can describe why, um --
11    (Unintelligible.)
12         But I did want to address this.  (Unintelligible.)
13    adopting the administrative agency complaint as well,
14    um, because I think that's an important one, but I can
15    pause on that for a moment.
16         THE COURT:  No, go ahead and address it.
17         MS. DOE:  Sure.
18         So the records that are at the administrative
19    agency are not public records, there is no public
20    docket.  The precedent in this circuit -- um, MIT cited
21    a case from 1985, um, and it's been essentially directly
22    contradicted, as far as I can tell, by two appellate
23    court precedents in the First Circuit, um, much more
24    recently.
25         One of those that is most instructive is *Doe v.*
```

1    *Town of Lisbon*, in which there was a police officer, I

2    believe, whose identity was known at a state

3    administrative agency, um, who sought to, um, not have

4    it revealed to the general public. And not only was

5    the, um -- was the fact that it had been revealed at an

6    agency, but not to the general public, was not a barrier

7    in that circumstance, um, that circuit judge then -- my

8    apologies for not using the right words, I do look

9    forward to having an attorney, um, is exactly the

10   opposite direction, and it was that if it had been in --

11   if there were privacy rules that were afforded at the

12   agency itself, even if it had been revealed in detail,

13   it was not a barrier to it being used in civil

14   litigation in the federal court.

15        And I want to say that this *Doe v. MIT* case from

16   1985 is, um, is -- there were a number of -- if you read

17   the decisions about one sentence, there were a number of

18   decisions around that time in which district judges had

19   different perspectives on this issue, on how much of a

20   disclosure is sufficient to create a public disclosure?

21   And that would mean that the use of anonymity in federal

22   district court and in the federal courts is moot. That

23   was one judge who took the position that any disclosure

24   to anybody is sufficient. And then, um, that

25   perspective was not upheld in appellate decisions, it's

1    no longer the case that an internal disclosure while at
2    an administrative agency is sufficient.

3        In addition to that, um, I have already started --
4    and other plaintiffs have started, um, the process to
5    ensure that, um, our names are not put into public
6    records, basically the same arguments I make here, and
7    this is almost identical to the *Doe v. MIT* case here.

8        While the use of anonymity at an agency was
9    proceeding through the administrative process, in that
10   case anonymity was maintained in the federal court.
11   And, um, that is, you know, what I would be seeking
12   here.  So long as, um -- certainly if made public, on a
13   public record in the agency, um, then privacy here would
14   be moot, but that's not the case.  And I'd confirm that
15   my name is not on the public record, and that there is a
16   process to follow to make sure that it stays that way.

17       And so these decisions in the First Circuit, a lot
18   of decisions about what it means to be a public record,
19   and they're all essentially consistent with this.

20       THE COURT:  Thank you.

21       Let's hear from MIT.  What do you say?

22       MR. LAPP:  Thank you, your Honor.

23       Well of course we're hearing this all for the
24   first time, um, because, you know, there should have
25   been a motion for leave to proceed anonymously 10 months

1    ago or when we filed our first motion to dismiss or when

2    we filed our second motion to dismiss.

3         We've been -- I will say, I'm trying to be

4    respectful of Ms. Doe, and I am, but I feel the need to

5    say, we've been hearing about this motion for leave to

6    proceed pseudonymously being forthcoming from the

7    beginning, we've been hearing about efforts to retain

8    counsel from the beginning, and yet here we are, 10

9    months later, hearing this all for the first time.

10        As to her arguments, I'll try to take them in

11   order.  First of all, of course we don't know anything

12   about this criminal case in which she is a witness.  It

13   seems to me the concern there, if there is a valid one,

14   could be addressed by not putting her current

15   whereabouts on the public docket.

16        You know this case is about what did or didn't

17   happen during her time at MIT.  We can litigate that

18   case with her proceeding in her own name without

19   revealing her current whereabouts, which, as I

20   understand it, are no longer in Massachusetts.  So I

21   think that issue can be solved without her proceeding

22   anonymously.

23        With respect to the impact on nonparties, Ms. Doe

24   has raised two issues.  The first has to do with this

25   so-called "related" case.  Your Honor has already stated

1    it's not related.  It is not a related case.  It's a

2    case that's pending in front of Judge Saris.  It's a

3    very different case from this one.

4         The plaintiff in that case was granted leave to

5    proceed pseudonymously without our having an opportunity

6    to oppose that motion.  We'll be reviewing that issue

7    with Judge Saris.  But for the purposes of this

8    discussion, I think all the Court needs to know is this.

9         The plaintiff in that case, we're told, you know

10   there could be an impact on their identity or their

11   safety because they are transgender.  The plaintiff in

12   that case, as we are going to point out to Judge Saris,

13   is out completely as a transgender person.  If you

14   Google their name, the first thing that comes up is a

15   number of social media posts in which they celebrate,

16   and rightly so, their transgender status.

17        THE COURT:  We're not litigating in matters before

18   Judge Saris.  But go ahead.

19        MR. LAPP:  My point being, for purposes of this

20   discussion, there's no third-party safety interest that

21   needs to be protected here.

22        The other issue she raised in this category was

23   FERPA, so this is the Family Educational Rights and

24   Privacy Act, which provides certain protections for the

25   education records of student involved in institutions

1  like MIT that get federal funding.

2       FERPA does not provide some blanket right to

3  privacy about student names and identities, it provides

4  certain rights of privacy in relation to student

5  education records.  If any student education records are

6  sought in this case, there's a protocol under FERPA, the

7  plaintiff subpoenas the records, we provide notice to

8  the students, and then they have an opportunity to come

9  to court to assert their own privacy rights should they

10  wish to.  FERPA protects students' privacy rights, the

11  plaintiff doesn't need to pursue that on their behalf.

12  And I would say, you know, this is an employment case,

13  it's not a case about MIT students.

14       The reference to sexual assault, if I'm not

15  mistaken, the incident that the plaintiff is referring

16  to is an incident that occurred while she was a student

17  at MIT, it's not a fact at issue in this litigation,

18  which is about her time as an independent contractor and

19  later an employee at MIT.

20       And then finally with respect to the

21  administrative agencies, I think Ms. Doe has sort of

22  answered the question herself.  The records of the MCAD

23  and the EEOC and OSHA can be sought under public records

24  laws and for that reason she tells us she is taking

25  steps with the agencies to protect against that.  But it

1  belies the notion that those records are not publicly
2  available in some way, shape, or form.  Whether she's
3  taking those actions, whether she'll be successful in
4  those actions, of course we don't know, because we're
5  hearing this for the first time.
6      But I submit --
7      THE COURT:  Thank you.  Here's what we're going to
8  do.
9      The motion to dismiss is denied on the following
10 terms.  Ms. Doe shall, within 30 days of today's date,
11 file an amended complaint that sets forth her true
12 name -- now it's easy to change your name in
13 Massachusetts, and if she's changed her name, she may
14 set forth her true name as changed in Massachusetts.  If
15 she has to refer to other people, she can refer to them
16 as "Witness 1" or "Witness 2."  If she claims there are
17 other victims or similarly-situated -- well they would
18 be witnesses, but they can be referred to without their
19 actual name, it's only the plaintiff, the party to the
20 case, that the Rule 10(a) -- to which 10(a) applies.
21     I am very pleased, Ms. Doe, that you have an
22 attorney representing you and I trust that he or she
23 will file an appearance promptly so that you can be
24 represented by an attorney here.
25     Trying to keep your, um -- trying to move the case

1    along and keep your appearances to a minimum, let me ask
2    you this, so we can go forward with an initial case
3    management schedule.
4        When do you want to go to trial in this case, your
5    case?
6        MS. DOE:  I would want to, um, seek the advice
7    from an attorney on that, um, not that I have identified
8    one, but whatever the standards are.
9        THE COURT:  Well the standards are it can't go to
10   trial, at least in this session of the Court, any later
11   than a year from now.
12       Well let's ask the defense.  When does the defense
13   want to go trial here?
14       MR. LAPP:  I think a year from now is actually
15   realistic, your Honor, this is a --
16       THE COURT:  All right, we'll put it down.  And
17   this is without prejudice to if an attorney files an
18   appearance, the attorney may be heard on the schedule.
19       So it's down for March, 2025, it will be on the
20   running trial list.  Since there's 30 days to file an
21   amended complaint, the same 30 days are afforded -- if
22   she's going to be pro se, there's no requirement for an
23   initial case management scheduling conference, and so --
24   or a proposal, but I will set the following date so
25   we're clear.

1        If there is to be motions to dismiss -- or rather

2   for summary judgment, any motion for summary judgment

3   must be filed by January 2nd, 2025, discovery will be

4   complete by December 1st, 2024.

5        I think that takes care of everything we need do

6   for this conference.  Are there any questions on the

7   part of the plaintiff?  And then I'll ask the same for

8   the defense.

9        Any questions, Ms. Doe?

10       MS. DOE:  Yes, um, I suppose I do have a question.

11   After 30 days, if I don't, um --

12       THE COURT:  I will dismiss your case not on the

13   merits, but for failure to file an amended complaint, as

14   I have directed.

15       MS. DOE:  Is that with or without prejudice?

16       THE COURT:  No, it's without prejudice.  But the

17   statute of limitations is running and you can't just

18   file another case before another judge or something,

19   because our relatedness rules do require that you come

20   back to me.  Yes.

21       MS. DOE:  Now as to the relatedness, um, I guess

22   my -- I did have some -- I suppose I was in the process

23   of preparing that motion, um, and I did understand it a

24   bit differently in that, um, it seems to me that the

25   facts in that case are encompassed in the facts of mine,

1    and vice-versa, what the actual facts are of the case.

2         THE COURT:  The plaintiffs are different.  I'm not

3    decided it based on, um, based on your representations

4    or based on the defense's representations, they have no

5    bearing on the relatedness issue in terms of

6    technicality.  A case that raises the same legal issues

7    but has two separate plaintiffs are separate cases under

8    the relatedness rules in this court and are randomly

9    drawn, as these cases have been.

10        Any other questions?

11        MS. DOE:  Yes.  I suppose that the case I have

12   seen is, um, the plaintiff was, um -- you know, um,

13   perhaps I would seek advice from my attorney, I'm

14   somewhat confused about --

15        THE COURT:  Well that makes sense.  That makes

16   sense.  I'm very glad you have an attorney, and you

17   should seek advice from your attorney.  But I've made

18   the order that I've made.  And if you have no questions

19   for me, and I can understand that, I'm not your

20   attorney.

21        So let me turn to the defense.  Any questions?

22        MR. LAPP:  No, your Honor.

23        THE COURT:  Very well.  That's the Court's order.

24   And we'll stand in recess.  We'll recess.

25        (Ends, 3:40 p.m.)

```
 1              C E R T I F I C A T E
 2
 3         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
 4    do hereby certify that the foregoing record is a true
 5    and accurate transcription of my stenographic notes
 6    before Judge William G. Young, on Wednesday, March 13,
 7    2024, to the best of my skill and ability.
 8
 9
10
11    /s/ Richard H. Romanow 10-24-24
      _____
12    RICHARD H. ROMANOW    Date
13
14
15
16
17
18
19
20
21
22
23
24
25
```



**BREAKAWAY**
COURIER SYSTEMS
56 BROAD STREET BOSTON, MA 02109

RECEIVED
CLERK'S OFFICE

USDC
1 COURT HOUSE WAY

* CLERK'S DROP BOX *

USMS
Screened